In re NICOLA. WILLIAMS, Immigration Com'r, v. UNITED STATES ex rel. GENDERING. SAME v. UNITED STATES ex rel. HOHANESSIAN.

(Circuit Court of Appeals, Second Circuit. January 16, 1911.)

Nos. 52, 78, 83.

CITIZENS (§ 7*)—MARRIAGE OF ALIEN WOMAN TO CITIZEN—EXCLUSION UNDER IMMIGRATION LAWS.

> Under Rev. St. § 1994 (U. S. Comp. St. 1901, p. 1268), which provides that "any woman who is now or may hereafter be married to a citizen of the United States and who might herself be lawfully naturalized shall be deemed a citizen," the wife of a citizen of the United States, who, although then an alien, might have been lawfully naturalized at the time of her marriage, and without regard to where the marriage took place, cannot be excluded from entry into the United States under the immigration laws, although she might be subject to exclusion if an alien.
>
> [Ed. Note.—For other cases, see Citizens, Cent. Dig. § 6; Dec. Dig. § 7.*
> Citizenship of married women, see note to Hopkins v. Fachant, 65 C. C. A. 5.]

Appeals from the District Court of the United States for the Southern District of New York.

Habeas corpus proceedings by Thakla Nicola, by Bertha Gendering; and by Paris Der Hohanessian, respectively, against William Williams, Commissioner of Immigration. From an order granting the writ in each case, respondent appeals. Affirmed.

For opinion below, see 173 Fed. 626.

Henry A. Wise, U. S. Atty. (Addison S. Pratt, Asst. U. S. Atty., and Robert Stephenson, of counsel), for appellant.

F. J. Bishop, J. S. Galland, and H. E. Brown, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. It is conceded that the principal question involved is the same in each of these appeals. That question is whether the relators are citizens of the United States. If they are citizens it is manifest that they cannot be refused admission to this country under the laws relating to aliens. In each of these cases the relator is the wife of an American citizen and section 1994 of the Revised Statutes (U. S. Comp. St. 1901, p. 1268), which is as follows, is applicable:

"Any woman who is now or may hereafter be married to a citizen of the United States and who might herself be lawfully naturalized shall be deemed a citizen."

---

In the recent case of United States v. Henrietta Cohen, 179 Fed. 834, 103 C. C. A. 28, decided June 14, 1910, we held that the alien wife of an alien man who had resided here for 30 years could not herself become an American citizen for the reason that she took the nationality of her husband and this remained until the marriage relation was legally terminated. This decision is only important as it asserts the importance of maintaining an undivided allegiance in the family relation. It is inconsistent with the policy of our law that the husband shall be a citizen and the wife an alien. In the cases at bar the relators are the legal wives of American citizens. This is abundantly established by the proof and we understand that it is not disputed by the district attorney.

It is not necessary to state the facts in all these cases; that of Bertha Gendering will serve as an illustration. She arrived at the port of New York September 28, 1909, from Rotterdam. In 1898 she was married to Magnus Gendering by proxy in Holland and subsequently she came to this country alone, was examined and admitted and soon thereafter a church marriage ceremony was performed in this country. At this time there was not a breath of suspicion against her moral character and she and her husband lived together for seven years, when he deserted her. He became an American citizen September 17, 1908. She supported herself for some time by dressmaking and then went to live with one Maurice Citroen, intending to marry him as soon as she obtains a divorce from Gendering. She has two brothers residing here, speaks English and, on arrival, had $200 in her possession. She is charged with coming here for immoral purposes.

The other women are alleged to be suffering from trachoma. Although we have been presented with learned briefs on both sides reviewing the history of the legislation on the subject of naturalization from the earliest times, it seems to us, as before stated, that the real question is a simple one and is within exceedingly narrow limits.

At the time the relators became citizens by marriage with American citizens, they might have been lawfully naturalized. Even if we assume the contention of the district attorney to be correct, that marriage will not make a citizen of a woman who would be excluded under our immigration laws, it does not affect these relators. There is no pretense that when their husbands' nationality was conferred upon them by law, they were not healthy, physically, mentally, and morally. If at that time they gained American citizenship, how did they lose it? What law deprives a citizen of his citizenship because he is so unfortunate as to have contracted a contagious disease?

The fact, if it be so, that these relators are undesirable citizens, is not germane to the present controversy. As pointed out by Judge Hand (173 Fed. 626), a woman does not lose her citizenship because her health is bad or her moral character open to criticism. These relators are not citizens of the countries from which they came, as those countries by the mere act of marriage with an American citizen, terminate their allegiance. They are American citizens or they are without a country. That they are citizens is affirmed, we think, by the great weight of authority, several of the leading cases being cited

in the opinion of the District Judge. Being citizens they cannot be excluded as aliens.

The decrees of the District Court are affirmed.