**HUGHES, Commissioner of Immigration, et al. v. UNITED STATES ex rel. LICATA.**

(Circuit Court of Appeals, Third Circuit. February 6, 1924.)

No. 3035.

1. **Habeas corpus ⬤≈113(½)—Appeal may be dismissed, where assignments of error inadequate.**

On appeal in habeas corpus proceedings, where assignments of error addressed to expressions in the judge's opinion and to his refusal to enter judgment for defendant are wholly inadequate, the appeal may be dismissed.

2. **Habeas corpus ⬤≈92(1)—District Court may determine on habeas corpus whether alien had proper hearing.**

Though decision of board of special inquiry on the fact of dangerous contagious disease is final, under Act Feb. 5, 1917, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii), federal courts have jurisdiction on habeas corpus to determine whether the alien has been denied a proper hearing and a fair trial, and to this end may inquire, not whether on the evidence the decision of the board is right or wrong, but whether evidence adequately supports the decision, and, if it does not, may discharge the alien.

3. **Aliens ⬤≈54—Certificate of physician held not sufficient evidence of dangerous contagious disease.**

Surgeon's certificate certifying that alien was afflicted with trachoma, but that a statement that the condition might have been detected at the foreign port of embarkation was not warranted, did not support a finding by the board of special inquiry, under Act Feb. 5, 1917, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii), that the alien was afflicted with trachoma, such disease developing very slowly, and embarkation and debarkation occurring within 15 days, and the alien was properly discharged on habeas corpus.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Habeas corpus proceeding by the United States, on the relation of Giuseppina Licata, against James L. Hughes, Commissioner of Immigration, Port of Philadelphia, and another. The relator was discharged (289 Fed. 808), and defendants appeal. Affirmed.

George W. Coles, U. S. Atty., and Robert V. Bolger, Sp. Asst. U. S. Atty., both of Philadelphia, Pa., for appellants.

Adrian Bonnelly, of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMSON, District Judge.

WOOLLEY, Circuit Judge. [1] Giuseppina Licata, an alien, sailed from Italy on September 28, 1922, and arrived at the Port of New York on October 13, following. She was detained in the hospital at Ellis Island until October 23. On that day two United States Public Health Surgeons certified that she was afflicted with trachoma, a dangerous contagious disease. On the surgeons' certificate a Board of Special Inquiry found that she had the disease and entered an order that she be excluded from the country. She was then put on board the Steamship Colombo for deportation under a warrant issued

by the Secretary of Labor. Outward bound, the ship touched at Philadelphia. While there Giuseppina Licata applied to a judge of the District Court of the United States for the Eastern District of Pennsylvania for a writ of habeas corpus, on which, later, she was discharged from the custody of the Commissioner of Immigration and given her liberty. From this order of the judge the Commissioner of Immigration and the master of the steamship took this appeal. The assignments of error (addressed to expressions in the judge's opinion and to his refusal to enter judgment for the appellants) being wholly inadequate (The Blakeley [C. C. A.] 285 Fed. 348), the appeal, on motion of counsel, or of our own motion, might readily be dismissed. In order, however, that no one may misinterpret the decision as it bears on the necessarily broad authority of public health officials of the Department of Immigration in the performance of their highly responsible duties, we shall discuss the case as though properly here.

[2] There were two hearings, one before a Board of Special Inquiry at Ellis Island and the other before a District Judge at Philadelphia; one on a surgeon's certificate of disease, the other on a writ of habeas corpus. It is important to have this fact clearly in mind and to keep the two hearings, both as to purpose and procedure, separate and apart.

The hearing before the Board of Special Inquiry was held under the Act of Congress of February 5, 1917, 39 Stat. 874 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u). This act, in its general provisions and main purpose, follows so closely the Act of February 20, 1907, 34 Stat. 898, and the Act of March 3, 1903, 32 Stat. 1213, that many cases decided under the earlier acts may be validly cited as authorities for cases under the later act.

The current act provides methods for disposing of all cases of aliens who seek to enter the United States. In cases of certain classes appeals lie to the Secretary of Labor. With these we are not concerned. We have to do only with a case where the alien has "a dangerous contagious disease." With respect to such the statute commands his exclusion. It gives no discretion to immigration officials (section 21 [section 4289¼kk]), nor does it accord the alien an appeal to the Secretary of Labor (section 17 [section 4289¼ii]). The appellants, regarding the writ of habeas corpus in effect an appeal—which, of course, it cannot be—maintain that the decision of the Board of Special Inquiry on the fact of disease was final and, therefore, the District Judge had no power to review and reverse its action on writ of habeas corpus. Whatever may have been the decisions under the Act of February 20, 1907 (Rodgers v. United States, 157 Fed. 381, 85 C. C. A. 79; United States v. Rodgers [D. C.] 182 Fed. 274; Id., 185 Fed. 334, 107 C. C. A. 452; United States v. Rodgers, 191 Fed. 970, 112 C. C. A. 382; United States v. Rubin [D. C.] 227 Fed. 938; Id. [D. C.] 233 Fed. 125), this question is set at rest by the express terms of the Act of February 5, 1917, which provides (section 17):

"That the decision of a Board of Special Inquiry * * * except as provided in section twenty-one hereof [referring to appeals to the Secretary of Labor in certain cases], *shall · be final* as to the rejection of aliens affected with tuberculosis in any form or with a loathsome or dangerous contagious disease."

It is evident that this statute means just what it says. Zartarian v. Billings, 204 U. S. 170, 176, 27 Sup. Ct. 182, 51 L. Ed. 428; Hee Fuk Yuen v. White (C. C. A.) 273 Fed. 10; Chung Fook v. White (C. C. A.) 287 Fed. 533; Wallis v. United States (C. C. A.) 273 Fed. 509. Yet, while the decision of a Board of Special Inquiry is final in a case of this character, it is, so far as it affects the alien, conclusive only if he has been given a fair hearing. Federal courts have jurisdiction to determine, not on appeal but on habeas corpus, whether, in the circumstances, the alien has been denied a proper hearing and a fair trial. Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Gin Dock Sue v. United States, 245 Fed. 308, 157 C. C. A. 500. To this end federal courts on habeas corpus may inquire not whether, on the evidence, the decision of a Board of Special Inquiry is right or wrong but whether the evidence adequately supports the decision. If it does, that is an end to the matter. If it does not, federal courts on habeas corpus may disregard the decision and discharge the alien, for, as this court has said:

"Peremptory and drastic as our laws in this respect necessarily and properly are, an alien has rights of which he cannot be deprived, and for the assertion of which he may invoke judicial interference."

Of these notably is the alien's right to a full and fair hearing. Rodgers v. United States, 157 Fed. 381, 384, 85 C. C. A. 79; Gegiow v. Uhl, 239 U. S. 3, 9, 36 Sup. Ct. 2, 60 L. Ed. 114; Zakonaite v. Wolf, 226 U. S. 272, 33 Sup. Ct. 31, 57 L. Ed. 218; Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967.

Having indicated that nothing transpired in this case which limited the full force of the law or weakened the authority of immigration health officials, we come to the only question in the case and, looking at the evidence, inquire whether it supports the decision of the Board of Special Inquiry on which the order of deportation was based.

The only evidence before the Board of Special Inquiry was the surgeons' certificate. On this certificate alone the Board issued its order. Ordinarily a surgeons' certificate is evidence. The statute says that the "medical officers * * *, shall certify, for the information of the * * * Boards of Special Inquiry, * * * any and all * * * diseases observed by said medical officers in any such alien" (section 16 [section 4289¼i]), and "that the decision of a Board of Special Inquiry shall be based upon the certificate of the examining medical officer." (Section 17). Whether such certificate alone will in every case be sufficient evidence to sustain an order of exclusion we are not called upon to decide. See Ex parte Joyce (D. C.) 212 Fed. 285. In other words, we are not declaring what evidence should be introduced to sustain an order of exclusion; we are inquiring whether the evidence which was introduced in this case does sustain the order.

The surgeons' certificate reads as follows:

"This is to certify that the above-described person has this day been examined and is found to be afflicted with trachoma, which is a dangerous contagious disease. Owing to the uncertainty as to the alien's condition at the time of embarkation, a statement that the condition herein certified might have been detected by competent medical examination at the foreign port of embarkation is not, in our opinion, warranted."

Thus the surgeons certified to two facts: First, that the alien had trachoma on arriving in this country; and second, that, in the stage of the disease, it could not have been detected at the time of her embarkation.

[3] This is a singular certificate because the two facts certified, occurring within fifteen days, are opposite in their nature and wholly irreconcilable. This is so because trachoma is a disease that develops very slowly and cannot be definitely diagnosed for a period of at least two months after its incipiency, and then only by a specialist in that disease. If it could be determined by a general physician that the alien had trachoma when she arrived at the Port of New York, it could have been detected on her embarkation from Italy. If the disease could not have been detected on her embarkation from Italy, it could not be determined that she was afflicted with it on her arrival in New York. Thus the certificate as framed does not show that the alien was afflicted with trachoma when she arrived in this country. Though certifying that she was, it shows in the next paragraph with certainty that she was not. In this the certificate differs from the one in Rodgers v. United States, 157 Fed. 381, 85 C. C. A. 79. Therefore the certificate in this case is not evidence of the presence of disease and does not, in our judgment, sustain the Board's finding. As this insufficient certificate was the only evidence before the Board of Special Inquiry, it follows that its finding was made without valid evidence and therefore without giving the alien a fair hearing. Accordingly, the learned judge of the District Court was justified in concluding that the relator was held unlawfully and in discharging her from custody.

The judgment of the District Judge is affirmed.