## Ex parte DONG MING.

District Court, N. D. California, S. D. June 23, 1927.

### No. 19179.

1. **Aliens ⬤▭32(6)—Registers of birth certificates, kept by clergymen or other proper officers, are competent in proceeding before immigration authorities.**

In proceeding before immigration authorities, registers of certificates of clergymen or other proper officers are competent evidence of birth.

2. **Aliens ⬤▭32(8)—Evidence held to show applicant was son of native-born citizen of Chinese race (Comp. St. § 3947).**

Evidence *held* to show that an applicant for admission as the son of a native-born citizen

of the Chinese race did not have a fair hearing, to establish the fact that his father was born in San Francisco, and that applicant was entitled to admission as a citizen under Rev. St. § 1993 (Comp. St. § 3947).

Habeas Corpus. Petition of Dong Ming for writ of habeas corpus. Writ granted.

Stephen M. White, of San Francisco, Cal., for petitioner.

George J. Hatfield, U. S. Atty., and Richard M. Lyman, Asst. U. S. Atty., both of San Francisco, Cal., for respondent Commissioner of Immigration at San Francisco.

ST. SURE, District Judge. Dong Ming, 16 years of age and born in China, seeks admission to this country as a son of a citizen, Dong Ying, under the provisions of section 1993, Revised Statutes (Comp. St. § 3947). The burden of applicant's petition is that the hearing accorded him by the immigration authorities was unfair and prejudicial to his rights. After a trial upon the merits, the hearing of testimony, and consideration of the law and the evidence, including the record in the case, this court has reached the conclusion that petitioner's claim must be sustained.

[1, 2] "In the present case testimony has been presented in support of Dong Ying's alleged birth in San Francisco," states the Board of Review in dismissing the appeal. "The evidence in Dong Ying's file is also available for consideration." Thus lightly does the board brush aside a certificate of birth showing that Dong Ying was born in San Francisco on February 12, 1880, at 721 Sacramento street. In a proceeding before immigration authorities, registers of certificates kept or issued by a clergyman or other proper officer are competent evidence of the fact of birth. United States v. Tod (C. C. A.) 296 F. 345. There should have been a specific finding relating to the birth certificate. United States ex rel. Schachter v. Curran (C. C. A.) 4 F.(2d) 356.

In its opinion the Board of Review further state: "Numerous serious discrepancies are noted in the testimony now offered by him (Dong Ying) and his witness Yee Jock and that given by them during the hearing some years ago which are set forth in detail in the summary of the board chairman at the port. It would appear from the testimony of Dong Ying that his father died about 11 years after his mother's death in 1889, or when he was about 10 years old. The death certificates show that the alleged mother died in 1885, at which time Dong Ying would have been but 5 years of age, and that the alleged father died in 1899, or about 14 years after the alleged mother's death."

Dong Ying testified that his mother died in 1889, whereas the death certificate shows that she died in 1885. There is, however, no discrepancy as to the time of the death of Dong Ying's alleged father; Dong Ying having testified that his father died in 1899 and the death certificate showed the same date. In regard to the discrepancy as to the mother's death, we fail to see the bearing such a discrepancy has upon the fact of Dong Ying's birth. Dong Ying was born in 1880. He was therefore only 5 years old at the time of the death of his mother. It is hard to conceive of the average human who is 47 years of age, as is Dong Ying, and who was only 5 years old when his mother died, having any personal recollection of her death. It is a significant fact that the death certificate of the mother was introduced by Dong Ying himself, and not by the immigration authorities.

There is also mention of "considerable conflict between the testimony of Dong Ying and his witness Yee Jock as to alleged meetings," but there is no specification of any such discrepancies. An examination of the record shows that these so-called discrepancies were slight and trivial, and not entitled to any weight in a matter involving vital human rights. See Johnson v. Damon (C. C. A.) 16 F.(2d) 65. In the trial on the merits the following undisputed evidence was adduced in support of Dong Ying's citizenship:

(1) The birth certificate mentioned above, which was neither attacked or disproved by the immigration authorities.

(2) Dong Ying appeared before the immigration authorities in 1905, when complaint was made to the inspector in charge at Tucson, Ariz., that Dong Ying was unlawfully in the United States. An affidavit of a notary public then located in Tucson shows that an examination of witnesses was held before the inspector on May 16, 1905, and that, after the testimony given by two white witnesses and of various Chinese witnesses, Dong Ying was discharged upon the recommendation of the United States attorney at Tucson, upon the ground that there was not sufficient evidence to cause his arrest. The two white witnesses who appeared at that time were Mr. Edgar J. and Joseph Da Vega. In a joint affidavit executed by them on January 17, 1905, on which there is a photographic likeness of Dong Ying, both of those men

identified Dong Ying as being a Chinese boy whom they knew of their own knowledge to have been born on Sacramento street, San Francisco, about the year 1880. Affiants also stated that they knew Dong Ying's father, giving his name, and his mother, whose name was unknown to them; that they knew Dong Ying's father was formerly the manager of an employment agency and later conducted an undertaking establishment, and that they knew of his death about 1899. They also stated that they had met Dong Ying frequently since he was a child, and were thus enabled to identify him. Joseph Da Vega has since died.

His brother, Edgar J. Da Vega, personally appeared at the trial and gave testimony. The witness identified his signature and that of his brother to the affidavit, and stated to the court that the statements therein made by him and his brother were absolutely true. Mr. Da Vega was born in San Francisco, has lived here all his life, is a married man with a family, and has an established business here. He testified that, when he first knew Dong Ying's father and Dong Ying, his place of business was within one block of that of Dong Ying's father. The witness' appearance and manner of testifying impressed the court, and the court believes that the testimony given by him is true. The witness was positive in his identification of Dong Ying as the person whom he knew as having been born at 721 Sacramento street, San Francisco, in 1880.

(3) Of record are the death certificates relating to both Dong Ying's father, Dong Yip Hon, showing that he died at 810 Sacramento street on August 4, 1899, and to Dong Ying's mother, Lang Shee, showing that she died at 721 Sacramento street (the claimed place of Dong Ying's birth) in 1885.

(4) On January 16, 1905, Gee Chung Ngor executed an affidavit, attached to which is a photograph of Dong Ying, identifying him as the Dong Ying who was born at 721 Sacramento street in the year 1880, his parents being Dong Yip Hon and Lang Shee; Gee Chung Ngor stating under oath that he was the physician who attended his birth, and giving the name of a Chinese midwife who assisted him.

(5) Dong Ying made two trips to China, departing on the first and "essential" one (so far as his paternity of the applicant is concerned), in 1909, returning in 1912, and departing on his second one in 1920, returning in August, 1926, accompanied by the applicant, having been admitted on the occasion of each return as a merchant. Dong Ying has always claimed that he was born in this country at the place and time specified in his birth certificate, and his admission by the immigration authorities on the merchant's return certificate was as a lawfully domiciled merchant, which was an administrative concession of the legality of his residence here.

(6) A letter from the Adjutant General of the United States Army shows the following: "The draft records show that Dong Ying, order No. A-4046, serial No. 2283, registered September 12, 1918, with the local board for Pima county, Ariz. He executed a questionnaire November 7, 1918, in which he gave his date and place of birth as February 12, 1880, San Francisco, Cal., and in answer to the question as to whether he had any children he gave the name of Dong Ming, Yon Mee village, Sunning district, Kwang Lung province, China, whose age was given as 8 years." Dong Ying did not claim exemption when he registered for the draft.

Upon consideration of the evidence and the law in this case it is clear that the applicant did not have a fair hearing before the immigration authorities, and the court so finds. The court further finds that Dong Ying is a native-born citizen of the United States, having been born in the city and county of San Francisco, state of California; that Dong Ming, the detained person, is a natural minor son of his said father, Dong Ying, and that they are both citizens of the United States, the detained being so under the provisions of section 1993 of the Revised Statutes, and as such entitled to enter into and remain within the United States.