# ZARTARIAN *v.* BILLINGS, COMMISSIONER OF IMMIGRATION.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 120.    Submitted December 7, 1906.—Decided January 7, 1907.

Naturalization acts of the United States have limited admission to citizenship to those within its limits, and under its jurisdiction.

An alien's right to acquire citizenship is purely statutory, and extension of the effect of naturalization to minor children of the person naturalized not included in the statute must come from Congressional legislation and not judicial decision.

Section 2172, Rev Stat., and the naturalization laws of the United States, do not confer citizenship on the minor children of a naturalized alien who were born abroad and remain abroad until after their parent's naturalization, such children are aliens, subject as to their entrance to the United States to the provisions of the Alien Immigration Act of March 3, 1903, 32 Stat. 1213, and may be excluded if afflicted with contagious disease.

THE facts are stated in the opinion.

*Mr. Daniel B. Ruggles* for petitioner:

If the girl was not an alien within the intent and meaning of the act of March 3, 1903, the commissioner had no authority to detain or deport her, and the final order of the Circuit Court must be reversed. *Gonzales* v. *Williams,* 192 U. S. 1.

The question raised above as to citizenship or status is purely one of law. As there is no dispute as to the facts, *United States* v. *Ju Toy,* 198 U. S. 253, does not govern. The question passed on in that case by the Secretary of Commerce and Labor was in reality as to the place of birth of the petitioner, a question of fact, and the court, by a majority opinion, held that the decision of such an executive officer on a question of fact was final.

The said Mariam, or her mother in her behalf, had done everything possible to abandon her foreign allegiance in order to assume the rights incident to her father's status as an American citizen, and was within the intent and meaning of § 2174, Rev. Stat. See, also, *Boyd* v. *Nebraska,* 143 U. S. 178.

Having submitted to the allegiance of the United States at the implied invitation of that government, she cannot be regarded as an alien. *Gonzales* v. *Williams, supra.*

Under Rev. Stats. § 2172, if the child Mariam had landed and resided in the country a few weeks, or perhaps days, it would appear that she could maintain a claim to be regarded as a citizen by virtue of her father's naturalization. See Ruling of Dep. of State, For. Rel. 1881, p. 53; also 1885, pp. 395, 396.

*Mr. Alford W. Cooley,* Assistant Attorney General, for appellee.

MR. JUSTICE DAY delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of the United States for the District of Massachusetts, denying a pe-

tition for a writ of *habeas corpus* filed by Charles Zartarian in behalf of Mariam Zartarian, his daughter, who, it was alleged, was unlawfully imprisoned, detained and restrained of her liberty at Boston by the United States Commissioner of Immigration, which imprisonment was alleged to have been in violation of the constitutional rights of the said Mariam Zartarian, without due process of law and contrary to the provisions of section 2172 of the Revised Statutes of the United States, which section, it is alleged, made said Mariam a citizen of the United States by virtue of the citizenship of her father, the petitioner.

The United States District Attorney and the attorney for the petitioner stipulated the following facts:

"The petitioner, Charles Zartarian, formerly a subject of the Sultan of Turkey, became a naturalized citizen of the United States on September 12, 1896, at the Circuit Court of Cook County in the State of Illinois. That his daughter Mariam, on whose behalf this petition is brought, is a girl between fifteen and sixteen years of age, and was born just prior to the petitioner leaving Turkey. That in the latter part of the year 1904 the Turkish Government, at the request of the United States Minister at Constantinople, granted permission to the petitioner's wife, minor son, and his said daughter, Mariam, to emigrate to the United States, it being stipulated in the passport issued to them that they could never return to Turkey. That on March 22, 1905, the Hon. G. V. L. Meyer, then United States Ambassador at Rome, Italy, issued a United States passport to your petitioner's said wife and daughter. That said Mariam arrived at Boston from Naples, Italy, on April 18, 1905, and that on April 18, 1905, she was found to have trachoma, and was debarred from landing by a board of special inquiry appointed by the United States Commissioner of Immigration for the port of Boston."

The petitioner's child, Mariam Zartarian, was debarred from landing at the port of Boston under the provisions of the act of March 3, 1903, chap. 1012, 32 Stat. 1213, U. S. Com. Stat.

1901, Supp. of 1903, p. 170, entitled "An act to regulate the immigration of aliens into the United States."

Section 2 of that act, among other things, provides that certain classes of aliens shall be excluded from admission to the United States, including "persons afflicted with a loathsome or with a dangerous contagious disease." Upon the finding of the board of inquiry that said Mariam had trachoma, she was debarred from landing.

The contention is that she does not come within the terms of this statute, not being an alien, but entitled to be considered a citizen of the United States, under the provisions of section 2172 of the Revised Statutes, which provides: "The children of persons who have been duly naturalized under any law of the United States . . . being under the age of twenty-one years at the time of naturalization of their parents, shall, if dwelling in the United States, be considered as citizens thereof."

As Mariam was born abroad, a native of Turkey, she has not become a citizen of the United States, except upon compliance with the terms of the act of Congress, for, wanting native birth, she can not otherwise become a citizen of the United States. Her right to citizenship, if any she has, is the creation of Congress, exercising the power over this subject conferred by the Constitution. *United States* v. *Wong Kim Ark,* 169 U. S. 649, 702.

The relevant section, 2172, which it is maintained confers the right of citizenship, is the culmination of a number of acts on the subject passed by Congress from the earliest period of the Government. Their history will be found in vol. 3, Moore's International Law Digest, p. 467.

Section 2172 is practically the same as the act of April 14, 1802, 2 Stat. 153, which provided:

"The children of persons duly naturalized under any of the laws of the United States . . . being under the age of 21 years at the time of their parents being so naturalized . . . shall, if dwelling in the United States, be considered as citizens of the United States, and the children of persons who are now

or have been citizens of the United States shall, though born out of the limits and jurisdiction of the United States, be considered citizens of the United States."

In *Campbell* v. *Gordon*, 6 Cranch, 176, it was held that this act conferred citizenship upon the daughter of an alien naturalized under the act of January 29, 1795, she being in this country at the time of the passage of the act of April 14, 1802, and then "dwelling in the United States."

The act has also been held to be prospective in its operation and to include children of aliens naturalized after its passage, when "dwelling in the United States." *Boyd* v. *Thayer*, 143 U. S. 135, 177.

The construction of this law and the meaning of the phrase "dwelling in the United States" has been the subject of much consideration in the executive department of the Government having to do with the admission of foreigners and the rights of alleged naturalized citizens of the United States. The rulings of the State Department are collected in Prof. Moore's Digest of International Law, vol. 3, pp. 467 *et seq.*

The department seems to have followed a rule established at an early period, and formulated with fullness in Foreign Relations for 1890, p. 301, in an instruction from Mr. Blaine to Minister Phelps, at Berlin, in which it was laid down that the naturalization of the father operates to confer the municipal right of citizenship upon the minor child if, at the time of the father's naturalization, dwelling within the jurisdiction of the United States, or if he come within that jurisdiction subsequent to the father's naturalization and during his own minority.

Whether, in the latter case, a child not within the jurisdiction of the United States at the time of the parents' naturalization, but coming therein during minority, acquires citizenship is not a question now before us.

The limitation to children "dwelling in the United States" was doubtless inserted in recognition of the principle that citizenship can not be conferred by the United States on the citizens of another country when under such foreign jurisdic-

tion; and is also in deference to the right of independent sovereignties to fix the allegiance of those born within their dominions, having regard to the principle of the common law which permits a sovereignty to claim, with certain exceptions, the citizenship of those born within its territory.

It is pointed out by Mr. Justice Gray, delivering the opinion in *United States* v. *Wong Kim Ark*, 169 U. S. 649, 686, that the naturalization acts of the United States have been careful to limit admission to citizenship to those "within the limits and under the jurisdiction of the United States."

The right of aliens to acquire citizenship is purely statutory; and the petitioner's child having been born and remained abroad, clearly does not come within the terms of the statute. She was debarred from entering the United States by the action of the authorized officials, and, never having legally landed, of course could not have dwelt within the United States. *Nishimura Ekiu* v. *United States*, 142 U. S. 651.

It is urged that this seems a harsh application of the law, but if the terms of the statute are to be extended to include children of a naturalized citizen who have never dwelt in the United States, such action must come from legislation of Congress and not judicial decision. Congress has made provision concerning an alien's wife or minor child suffering from contagious disease, when such alien has made a declaration of his intention to become a citizen, and when such disease was contracted on board the ship in which they came, holding them under regulations of the Secretary of the Treasury until it shall be determined whether the disorder will be easily curable, or whether such wife or child can be permitted to land without danger to other persons, requiring that they shall not be deported until such facts are ascertained (32 Stat. 1221, U. S. Comp. Stat. 1901, Supp. of 1903, p. 185). But Congress has not said that an alien child who has never dwelt in the United States, coming to join a naturalized parent, may land when afflicted with a dangerous contagious disease.

As this subject is entirely within Congressional control, the

matter must rest there; it is only for the courts to apply the law as they find it.

It is suggested that the agreed finding of facts contains no stipulation as to the dangerous or contagious quality of trachoma, but the petition shows that the petitioner's daughter was debarred from landing because it was found that she had a dangerous contagious disease, to wit, trachoma. Furthermore, the statute makes the finding of the board of inquiry final, so far as review by the courts is concerned, the only appeal being to certain officers of the department. 32 Stat. 1213; *Nishimura Ekiu* v. *United States*, 142 U. S. 651.

Finding no error in the order of the Circuit Court, it is

*Affirmed.*