In re KEMPSON. In re CHEDORE. In re PINCUS.

(District Court, W. D. Washington. N. D. June 28, 1926.)

Nos. 11785, 11529, 11495.

**I. Aliens ☞68(1, 2, 3).**

Under Comp. St. §§ 963, 4289¼b, and section 4352, subd. 2, inspection and registration of aliens on arrival, and filing, with petition for citizenship, in office of clerk of court, of a certificate, of arrival and declaration of intention, are prerequisite to valid petition for citizenship.

**2. Aliens ☞68(3)—Alien has not "arrived" until he has passed required examinations to determine whether he is in excluded classes; "arrival" (Comp. St. § 963, and section 4352, subd. 2).**

Alien has not "arrived" within Comp. St. § 963, and section 4352, subd. 2, until he has passed required examinations to determine whether he belongs to excluded classes; "arrival" not being effective until entry is made in compliance with legal requirements and legal residence begins.

**3. Aliens ☞60.**

Statutes granting privilege of citizenship should be strictly construed and followed.

**4. Aliens ☞68(3)—Department of Labor cannot dispense with filing of certificate of arrival by applicant for citizenship (Comp. St. § 963, and section 4352, subd. 2).**

Department of Labor has no power to abrogate requirements of law relating to naturalization, and cannot dispense with filing of certificate of arrival required by Comp. St. § 963, and section 4352, subd. 2.

**5. Aliens ☞68(3).**

Applicants for citizenship are not responsible for default of officials in making proper registration when they report for inspection, under Comp. St. § 963, and section 4352, subd. 2.

**6. Aliens ☞68(3)—Applicant for citizenship failing to report for inspection held not entitled to nunc pro tunc certificate of entry (Comp. St. §§ 963, 4389¼b, and section 4352, subd. 2).**

Under Comp. St. §§ 963, 4289¼b, and section 4352, subd. 2, alien applying for citizenship, who did not report to Immigration Bureau for inspection until more than five years after entry, was not entitled to nunc pro tunc certificate of entry, and his legal residence will date from his compliance with law.

**7. Aliens ☞68(3).**

Where no record of inspection or examination of applicant for citizenship was made at time of entry, he was entitled to nunc pro tunc certificate of entry under Comp. St. § 963, and section 4352, subd. 2.

**8. Aliens ☞62—Legal residence of alien who arrived March 4, 1919, and reported for inspection and paid head tax February 5, 1926, did not commence until February 5, 1926 (Comp. St. § 963, and section 4352, subd. 2).**

Under Comp. St. § 963, and section 4352, subd. 2, legal residence of alien applicant for citizenship, who arrived March 4, 1919, reported for inspection and paid head tax February 5, 1926, and was given nunc pro tunc certificate of entry, did not begin until February 5, 1926.

Applications by Martin Joseph Kempson, by Joseph Henry Chedore, and by Joseph Pincus, to be admitted as citizens of the United States. Applications of Kempson and Pincus granted. Application of Chedore denied.

John Speed Smith, Chief Naturalization Examiner, of Seattle, Wash.

NETERER, District Judge. The identical point appears in each case and will be disposed of together. Objection to admission to citizenship is made: (a) The certificate of arrival filed with the petition is a nunc pro tunc certificate as of the time of the arrival of alien. (b) No lawful entry as required by the immigration laws was made, and therefore no legal residence obtained for naturalization purposes.

Section 963, Comp. St., provides that the Bureau of Naturalization and Immigration shall keep books of record wherein the Commissioners of Immigration shall register each alien arriving in the United States after the passage of the act, giving his name, occupation, description, place of birth, last residence, the intended place of residence of the applicant in the United States, date of his arrival, and the name of vessel, if entered through a port, and to give to such alien a certificate of arrival, with the particulars thereof. Section 4352, subd. 2, Comp. St., provides that with the petition for naturalization shall be filed a certificate from the Depart-

ment of Commerce and Labor, if the petitioner arrives after the passage of the act, giving the date, place, and manner of his arrival, and the declaration of intention shall be attached to and made a part of the petition.

[1] Two distinct acts are prerequisite to a valid petition for citizenship: (1) Inspection and registration upon arrival; (2) the filing with the petition for citizenship in the office of the clerk of court a certificate of arrival and the declaration of intention.

The petitioner Kempson was born in Ireland, 1899, arrived as a seaman on the steamship Antiochus at the port of Seattle, January 4, 1915, and has since resided in the United States or sailed upon United States registry vessels. Upon arrival of the ship, he deserted, did not report to the immigration authorities, was not inspected, did not pay the required head tax until August 26, 1920, on which date he appeared before an immigration inspector for inspection, was examined, and passed. On the following day a certificate was issued as of January 4, 1915.

Joseph Henry Chedore, subject of Great Britain and Ireland, was born June 22, 1892, at Gaston, West Quebec, Canada, arrived March 4, 1919, via Great Northern Railway, at Blaine, Wash., reported for inspection and paid the head tax February 5, 1926, and was given a certificate as of March 4, 1919, and has since resided in the United States.

Joseph Pincus was born December 15, 1894, in Poland, arrived August 26, 1918, via Canadian Pacific Railway boat at the port of Seattle and was inspected and admitted to entry, but no registration was made. He has since resided in the United States. A nunc pro tunc certificate was made as of the date of entry, at about the time of filing the petition.

[2-5] "Arrival," within the immigration laws, must mean compliance with the requirements entitling a person to entry. See Rhodes v. Iowa, 170 U. S. 412, 18 S. Ct. 664, 42 L. Ed. 1088; Harrison v. Vose, 50 U. S. (9 How.) 372, 13 L. Ed. 179. The petitioner had not "arrived" in the sense contemplated by the law, supra, until he had passed the required examinations to determine whether he belonged to the excluded classes. See Zartarian v. Billings, 204 U. S. 170, 27 S. Ct. 182, 51 L. Ed. 428; U. S. v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; Nishimura Ekiu v. U. S., 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146. "Arrival" was not effected until entry was made and legal residence begun. See U. S. ex rel. Randazzo v. Tod (C. C. A.) 297 F. 214. No power or discretion is lodged with the Department of Labor to abrogate any of the requirements of the law. Citizenship is the highest privilege which can be conferred, and the laws granting this privilege should be strictly construed and followed, and such intent is made manifest by the Congress by its progressive legislation: (1) Arrival or entry and registry of certain facts required of each alien; (2) the giving of 90 days' notice, before hearing, by the clerk upon filing of the petition for naturalization, affording the Bureau of Naturalization opportunity to make satisfactory inquiry. The starting point is the entry, evidence of which is registry and certificate. It is also evidentiary as to whether applicant is within the excluded classes (section 4289¼b, Comp. St.) and identity of the alien for the period of continuous residence required. "The filing of the certificate of arrival being a matter of substance, it is clear that no power is vested in the Naturalization Bureau to dispense with it." U. S. v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321. It being a matter of substance vital to the hearing, it may not be supplied by the Department of Labor by nunc pro tunc order. The purpose of the registration, no doubt, was inspired by reason of experience and investigation that the widespread frauds in naturalization were, in a large measure, due to the great diversity in local practices and the carelessness in discharge of official duties in this connection, and the prevalence of perjury in naturalization cases. U. S. v. Ness, supra. Applicants, however, are not responsible for default of officials in making proper registration when they reported for inspection.

[6, 7] Kempson reported to the Immigration Bureau on the 26th of August, 1920, and should have been registered instead of given a nunc pro tunc certificate of entry. He should not now be made to suffer for this official irregularity, but his legal residence should date from the time of his compliance with the law. Pincus, having reported for inspection, was examined and passed, but no record at the time was made. A nunc pro tunc certificate is proper in his case because it supplies a record which should have been made at the time. Kempson and Pincus should be admitted.

[8] Chedore reported for inspection and paid the head tax on February 5, 1926, was passed and given a nunc pro tunc certificate as of March 4, 1919. He should be registered as of the date of his examination, and passed, February 5, 1926. His legal residence did not commence until he was inspected and passed, and must date from that time. His petition is denied.